**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WILBESAN CHARTER SCHOOL,**
**INC., and MARY WHITE,**

      **Plaintiffs,**

v.                                                       Case No.  8:05-cv-2341-T-27TBM

**SCHOOL BOARD OF HILLSBOROUGH**
**COUNTY, FLORIDA,**[1]

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable James D. Whittemore for a Report and Recommendation on:

(1)     Plaintiffs' **Motion for Preliminary Injunction** (Doc. 14) and Defendant's response in opposition (Doc. 18); and

(2)     **Defendant's Motion to Dismiss** (Doc. 17) and Plaintiffs' response in opposition (Doc. 24).

Plaintiffs submit Mary White's affidavit (Doc. 15)[2] and Defendant submits the 2003 charter school contract it entered into with Wilbesan Charter School, Inc. (Doc. 17, Ex. A). A hearing on the motions was conducted on May 2, 2006. The motion to dismiss is addressed first.

---

[1] Plaintiffs brought suit against the School District of Hillsborough County, Florida. (Docs. 12, 14). Defendant states that the properly named Defendant is the School Board of Hillsborough County, Florida. See (Doc. 18).

[2] The affidavit appears to have been filed in support of the motion for preliminary injunction. The affidavit references exhibits but none were filed.

I.

By their Amended Complaint, Plaintiffs appear to allege violations of their rights to due process and equal protection as guaranteed by the Fourteenth Amendment. These claims proceed from the broad proposition that the Defendant, School Board of Hillsborough County, Florida, (hereinafter "School Board" or "Defendant") has "adopted and executed a policy, practice, custom and usage of operating a dual system of public charter schools for African-American operated charter schools and White operated charter schools in the Hillsborough County Public Schools (sic) District . . . ." (Doc. 12, ¶ 4). Allegedly, as a consequence of this policy and custom, the School Board imposed special requirements on Wilbesan Charter School, Inc., (hereinafter "Wilbesan") that were not imposed on so-called white-operated charter schools and Wilbesan's charter contract was terminated for a safety violation without it being afforded the opportunity to take corrective action as white-operated schools were permitted to do. Id., ¶¶ 5-6. Beyond these allegations, Plaintiffs claim they were each subjected to the School Board's "selective enforcement of laws, unequal protection of laws and disparate treatment" in violation of the Fourteenth Amendment. Id. at 7, 10 and ¶¶ 50, 66. However, Plaintiffs request that the court "enter a ruling finding the termination of Plaintiff WCS's charter and the closing of it (sic) operations an unconstitutional violation of Plaintiffs' due process rights under Article (sic) Fourteen of the [Constitution], . . . "[3] Id. at 9,

---

[3]In response to the motion to dismiss, Plaintiffs insist that there claims are "clear and exact" and allege "selective enforcement of laws, unequal protection of the laws and disparate treatment in violation of the Fourteenth Amendment and 42 U.S.C. § 1983." (Doc. 24 at 6). At oral arguments, counsel urged that Plaintiffs were asserting both equal protection and due process claims related to the School Board's disparate treatment of Plaintiffs due to White's race and the failure to give Plaintiffs time to correct fire code and safety violations as it had done with white-operated charter schools. Counsel conceded that this alleged denial of due process was part and parcel of his claim that Plaintiffs were treated differently than white-

13. While the Amended Complaint is poorly drafted, it is read to raise both equal protection and due process claims and adequately to assert that the School Board was motivated to act in the manner it did because Dr. Mary White (hereinafter "White") is an African-American and Wilbesan was an African-American-operated charter school. That being said, the following facts were gleaned from a liberal reading of the Amended Complaint (Doc. 12).[4]

Plaintiff Wilbesan was a charter school located in Tampa, Florida, established under §1002.33 of the Florida Statutes.[5] It was designed to serve at-risk middle school students and was founded and directed by Plaintiff White, an African-American female. The School Board is the governing body of the Hillsborough County public schools and is the sponsor for all charter schools in Hillsborough County, Florida. Funding for charter schools comes from the state and federal government and is distributed to the schools through the local school boards.

Wilbesan opened in July 2003. By Plaintiffs' allegations, the School Board repeatedly and systematically sought to close the school. Plaintiffs allege that Charlene Staley (hereinafter "Staley"), a school-board employee, administered a practice FCAT test to Wilbesan students in violation of state law and then attempted to close Wilbesan for low performance. They also allege that Staley improperly utilized a Sheriff's report containing an allegation (later deemed false) that a white male student was severely beaten at Wilbesan.

---

operated charter schools.

[4] As noted above, subsequent to filing the Amended Complaint, Plaintiffs filed an Affidavit of Claims (Doc. 15) that sets forth in greater detail and somewhat more clarity the course of events. However, I have not considered this affidavit in connection with the motion to dismiss.

[5] Section 1002.33 is a comprehensive statutory scheme governing the creation, termination, and operation of charter schools.

Although Plaintiffs allege that White, as an African-American, is within a protected class, they do not expressly allege that Staley's actions were motivated by reason of White's race.

In an effort to illustrate the alleged disparate and unequal treatment they received at the hands of the School Board after Wilbesan received a negative fire inspection report in August 2005 (and because of an issue with its certificate of occupancy), Plaintiffs cite to a number of reports apparently documenting fire and safety violations in public schools.[6] Plaintiffs allege that after Wilbesan received the negative report and without permitting it an opportunity to correct any deficiencies, the School Board terminated the school's charter contract on August 4, 2005. According to Plaintiffs, they were singled out for selective enforcement and disparate treatment in this regards as demonstrated by the School Boards' failure to take similar action against other similarly situated public schools and white-operated charter schools. By the allegations, Plaintiffs were held to a higher standard and, while not expressly pled, Wilbesan was singled out for termination of its charter contract because of White's race.

In Count I, White alleges that by reason of the unconstitutional termination of Wilbesan's charter contract, she was deprived of income she would have otherwise derived as an employee of the school. In Count II, Wilbesan alleges that it was deprived funds it was entitled to under state law and that the termination of the charter contract deprived it of its

---

[6]In particular, Plaintiffs cite to the following: a "2004-05 State Report" reflecting findings of numerous life/safety violations at a number of public schools in Hillsborough County; a "2004-05 State Report for Charter Schools" similarly reflecting life/safety violations at a number of charter schools in Hillsborough County; a 2003-04 annual report of the State Fire Marshal for Florida public schools; a "HCSB 2004-05 Fire Alarm Inspection Report" reflecting findings of a lack of fire alarm certifications; and a "HCSB 2004-05 State Report" reflecting findings of 6,378 repeat violations at public schools including white-operated charter schools. See (Doc. 12 at 4-12).

4

rights to due process and equal protection of the law.  Plaintiffs seek injunctive relief,[7] as well as reasonable attorney's fees and costs, pursuant to 28 U.S.C. § 1988.  See Am. Compl. (Doc. 12).  They do not seek monetary damages.

## II.

### A.

By its motion, Defendant first argues that the claim(s) raised by White should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(1), because White does not have standing to bring suit.  A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is a motion challenging the subject matter jurisdiction of the court.  Because a motion to dismiss for lack of standing is one attacking the court's subject matter jurisdiction, it is appropriately brought pursuant to Rule 12(b)(1).[8]  See Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n. 8 (11th Cir. 1993).

A plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  The doctrine of standing involves both a "case or controversy" requirement stemming from Article III, Section 2 of the Constitution, and a sub-constitutional "prudential" element.  Bennett v.

---

[7]Specifically, Plaintiffs seek a declaration that Defendant's closure of Wilbesan was unconstitutional and an order directing the School Board to reinstate Wilbesan's charter contract and release all necessary funding.

[8]In a Rule 12(b)(1) motion, jurisdiction may be attacked facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 925, n. 5 (11th Cir. 2003).  Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  Here, Defendant presents a facial attack supported by reference to the charter contract which is appended to the motion to dismiss.

5

Spear, 520 U.S. 154, 162 (1997). A plaintiff must demonstrate three elements to establish the Article III requirements of standing. First, the plaintiff must have sustained an "injury in fact," meaning "an invasion of a legally protected interest." Lujan, 504 U.S. at 560. This injury must be "concrete and particularized, . . . and 'actual or imminent, [as opposed to being] conjectural or hypothetical.'" Id. "The injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be [herself] among the injured. . . . If the plaintiff is merely a 'concerned bystander,' then an injury in fact has not occurred." Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (citations omitted). Furthermore, a plaintiff seeking only injunctive or declaratory relief must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the injury-in-fact requirement."[9] Id. Second, there must be a causal connection between the plaintiff's injury and the challenged conduct. Lujan, 504 U.S. at 560. Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561.

Here, Defendant argues that White does not have standing to bring suit because she is simply a concerned bystander in this action and the case involves no deprivation of her rights or privileges; any state action in terminating the charter contract was taken against the school and not White directly. In support of its argument, Defendant points to White's allegation that she was denied income from her job at Wilbesan only when the *school's* charter was terminated. Additionally, Defendant notes that, as alleged, the policy and custom

---

[9]"When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if [s]he has suffered a past injury." 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003).

6

giving rise to the termination of the school's charter was directed against Wilbesan and other African-American-operated charter schools, not any individuals.  Defendant urges that Plaintiffs' allegations reveal that all they are really claiming is a breach of contract between Wilbesan and the School Board, and, by a plain reading of the contract, White has no stake in such a claim because she was not a party to the charter contract or an intended third-party beneficiary to charter contract.[10]  (Doc. 17 at 5-9).

     I conclude that this aspect of Defendant's motion to dismiss should be granted as White has not alleged or otherwise demonstrated an injury in fact for standing purposes. Here, even assuming that the School Board had a racially discriminatory policy or custom as alleged, the enforcement of that policy or custom in this instance was directed at the school and infringed no rights of White guaranteed under the Fourteenth Amendment or by contract. Rather, it was Wilbesan's charter and its right to operate a charter school that were infringed by the allegedly wrongful termination of the charter contract.  Although White lost her position and income as a result of School Board's actions, this was not the consequence of an infringement of her own legally protected interests.  Here, White was and is free to pursue her vocation, even that of operating another charter school if she wishes to do so.  See Koziara, 392 F.3d at 1306 (holding that the plaintiff had not demonstrated an injury because the city's enforcement of its ordinance was directed toward the business where plaintiff worked not plaintiff's constitutional rights and plaintiff was free to pursue her career elsewhere).  Further, White seeks only declaratory or injunctive relief and thus must also allege a real and

---

[10] The Wilbesan 2003 Charter School Contract was between the School Board and "Wilbesan Charter School, Inc., a non-profit organization organized under the laws of the State of Florida . . ."  White executed the contract in her capacity as "Its Executive Director." See (Doc. 17, Attach. A).

immediate threat of future injury in fact. See id. (holding that a plaintiff seeking only declaratory or injunctive relief must show a real and immediate threat of future injury); 31 Foster Children, 329 F.3d at 1265. Even assuming that White suffered an injury through the loss of her job and income, she fails to allege or otherwise demonstrate that another injury in fact is imminent in the given circumstances.[11] For these reasons, it is recommended that the court grant Defendant's motion to dismiss Count I of the Amended Complaint.

B.

Next, Defendant argues that dismissal of Plaintiffs' Amended Complaint is warranted under Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim upon which relief can be granted.[12] A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint. In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light favorable to the plaintiff. See Williams v. Bd. of Regents of the Univ. Sys. of Ga., 441 F.3d 1287, 1295 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Rule 12(b)(6) motions are disfavored and are rarely granted. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). They only should be granted if the court finds beyond a reasonable doubt that the plaintiff can prove no set of facts entitling it to the relief sought. See id. (citing Conley v. Gibson, 355 U.S. 41, 45-56 (1957)); Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir.

---

[11]Because White has not established the constitutional minimums of standing, the prudential concerns need not be addressed.

[12]Defendant's argument that the court should abstain from exercising its jurisdiction over this action pursuant to Younger v. Harris, 401 U.S. 37 (1971), and its progeny is addressed below.

1992). When reviewing a motion to dismiss, the court may consider documents attached to the complaint or directly referred to in the complaint, and doing so will not convert the motion to one for summary judgment.[13] See Fed. R. Civ. P. 10(c); Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); Shibata v. Lim, 133 F. Supp. 2d 1311, 1315 (M.D. Fla. 2000).

Defendant urges the court to dismiss Count II insofar as it attempts to allege a violation of Wilbesan's rights to equal protection because it fails to state a claim for selective enforcement.[14] More particularly, Defendant urges that there is no factual support for the allegation that it had a policy, practice or custom of treating African-American-operated charter schools differently than white-operated schools and Wilbesan inappropriately relies on safety data concerning public schools that are not at all similarly situated to its own circumstances. (Doc. 17 at 14). At the hearing, Defendant also argued that Wilbesan's failure to allege that the white-operated charter schools were issued a cease and desist order by the fire marshal, as was Wilbesan, demonstrates that the white-operated charter schools are not similarly situated.

Plaintiff responds that it has sufficiently alleged its claim in accordance with the Federal Rules of Civil Procedure and that any facts needed to more narrowly define the scope

---

[13] Contrary to Plaintiffs' assertion, a court also may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the attached documents are central to the plaintiff's claim and undisputed in terms of authenticity. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

[14] Because I find that White does not have standing to bring the claims in Count I, the discussion here focuses on the adequacy of Wilbesan's claims in Count II. Henceforth, I refer to Wilbesan or Plaintiff.

9

of its claim are available through pretrial discovery.[15] According to Plaintiff, it has adequately stated a claim for selective enforcement by alleging that it was "singled out for disparate treatment and that other (sic) in a similar situation were not treated as Plaintiffs' were," and that Defendant's selective enforcement was motivated by race as evidenced by the fact that no white-operated charter schools "have ever suffered as Plaintiffs . . ." (Doc. 24 at 14) .

Section 1983 provides every person with the right to bring suit for constitutional violations against those acting under color of state law. 42 U.S.C. § 1983. However, § 1983 is merely a vehicle by which to bring suit; it does not create any substantive federal rights. Whiting v. Traylor, 85 F.3d 581, 583 (11th Cir. 1996). As such, to state a § 1983 claim, a plaintiff must point to a violation of a specific federal right. See id. While the pleading here is far from a work of art and indeed appears inconsistent at parts, a violation of the school's right to equal protection under the Fourteenth Amendment is alleged.

To prevail on an equal protection claim of selective enforcement, Wilbesan must demonstrate that (1) it was singled out for prosecution (enforcement) while others similarly situated were not prosecuted (subjected to the enforcement), and (2) the School Board's enforcement of the law against it was invidious or in bad faith. See Lanier v. City of Newton, Ala., 842 F.2d 253, 256 (11th Cir. 1988); Fillingim v. Boone, 835 F.2d 1389, 1399 (11th Cir. 1988); 2025 Emery Highway, L.L.C. v. Bibb County, Ga., 377 F. Supp.2d 1310, *1350 (M.D.

---

[15]Plaintiff responds further that, "defendant has already admitted that 'Defendant accepts the allegations of the Amended Complaint as true.' . . . Furthermore, defendant has failed to deny any of Plaintiffs' allegation (sic) or dispute them with sworn statements or otherwise respond to the Amended Complaint." (Doc. 24 at 14). This can only be read to reflect a lack of understanding on Plaintiff's part as to the law at this stage of the proceedings.

10

Ga. 2005). However poorly articulated, the allegations here set forth that Wilbesan was similarly situated to white-operated charter schools having fire code and/or safety violations and that the School Board treated Wilbesan differently than the white-operated charter schools by subjecting it to more stringent enforcement of the laws governing the violations, as well as greater penalties for violations. In a light favorable to Plaintiff, the facts alleged also fairly set forth that Wilbesan was treated differently because of race, i.e., it was considered an African-American-operated charter school because White is African-American.[16] Again, while the alleged discrimination is not particularly well pled, in a light favorable to the Plaintiffs, the allegations are adequate to withstand this motion. See Fillingim, 835 F.2d at 1399 (providing that the invidiousness requirement is satisfied where a plaintiff can establish that "the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious discrimination or interference with the legitimate exercise of constitutional rights."). Applying the applicable standard, I conclude that when the allegations are construed in a light favorable to Wilbesan, it does not appear beyond a reasonable doubt that Wilbesan can prove no set of facts entitling it to the relief sought.[17] Thus, it is recommended that the court deny the motion with respect to Wilbesan's claim in Count II that its rights to equal protection have been violated.

---

[16]Defendant does not dispute that White's race can be imputed to Wilbesan for the purposes of a § 1983 claim.

[17]Defendant appears correct that several of the public school examples Plaintiff relies upon to demonstrate selective enforcement/disparate treatment at the hands of the School Board likely do not demonstrate such at all given their dissimilar circumstances. However, the allegations also purport to include examples from white-operated charter schools that I find adequate on this motion to satisfy the liberal requirements of Rule 12(b)(6). As for Defendant's claim that these schools are not similarly situated either, the matter is better left for a motion for summary judgment after a period of discovery.

C.

Turning to Wilbesan's allegations that its rights to due process were violated, the allegations in the Amended Complaint that may be fairly construed as relating to a due process violation are as follows:

(1) "Defendants (sic) have not given Plaintiff's (sic) an opportunity to follow a corrective plan, as other schools and charter schools have been allowed, to correct the deficiencies of the fire inspection report," (Doc. 12 at ¶ 36);

(2) "Defendant failed to allow Plaintiffs to continue operation under a corrective action plan as it lets white operated Charter Schools to operate while identified safety issues are corrected," id., ¶ 69; and

(3) "WHEREFORE, the Plaintiffs ask this court to enter a ruling finding the termination of WCS's charter and the closing of it (sic) operations an unconstitutional violation of Plaintiffs' due process rights . . .," id. at 13.

Here, Wilbesan complains that it was not given any time to cure its fire/safety deficiencies before its charter was terminated and that its right to procedural due process was violated as a result.[18]

The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a procedural due process claim under § 1983, Plaintiffs must demonstrate (1) a deprivation of a constitutionally-protected liberty or property interest, (2) state action, and (3) constitutionally-inadequate process. Arrington v. Helms, 438 F.3d

---

[18] As noted above, this aspect of Plaintiff's claim is not clearly stated. At best, the claim is one for a denial of the school's procedural due process rights. See McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994). While counsel seeks to preserve this claim, he conceded at the hearing that the "due process" allegations are essentially part of the equal protection claims as Plaintiff maintains that the School Board permitted white-operated schools to take corrective action or in some cases, no action at all, and still remain open.

12

1336, 1347 (11th Cir. 2006) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Defendant argues that Wilbesan has failed to state a claim for violations of due process because it makes only "bald assertions" of such and in any event, Florida's statutory scheme provides for adequate post-deprivation due process which was provided to the school in this case.[19] (Doc. 17 at 16-17). Plaintiff does not respond with any degree of specificity other than to state that it does not rely on the allegations in the initial Complaint and that the [Amended] Complaint "sufficiently alleges the four prongs necessary to bring a claim under the Fourteenth Amendment . . ." (Doc. 24 at 15).

Upon my review, to the extent that Wilbesan seeks to allege a violation of procedural due process in Count II, the court should grant Defendant's motion. Purely as a matter of pleading, Wilbesan fails to set forth allegations sufficient to state such a due process violation. First, there is no adequate allegation of the deprivation of a constitutionally-protected liberty or property interest.[20] Even assuming that the charter contract would support a claim for deprivation of a constitutionally-protected property interest and that such

---

[19] Rather strangely, the majority of Defendant's argument urging dismissal of Plaintiff's procedural due process claim relies on allegations set forth in Count Three of the initial Complaint (Doc. 1), not on allegations set forth in the Amended Complaint (Doc. 12). See (Doc. 17 at 15-18). Because Plaintiff represented at the hearing that the basis of the due process allegations was the School Board's failure to afford Wilbesan the opportunity to take corrective action prior to terminating its charter, only those portions of the Defendant's response relevant to that claim are addressed on this motion.

[20] In this context, property interests stem from sources such as statutes, regulations, ordinances, and contracts, not from the Constitution. Arrington, 438 F.3d at 1348 (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576-77 (1972)). Whether those sources create a property interest must be decided by reference to state law. Id. Here, Plaintiff makes no attempt, either by way of its amended complaint or in response to the motion to dismiss, to establish it has such interests.

13

deprivation may be inferred from the pleadings, there are still no sufficient allegations in the Amended Complaint of a constitutionally inadequate process to support this claim. Indeed, on the Amended Complaint, Plaintiff makes no allegations concerning the remedies, adequate or otherwise, it pursued to overturn the decision to terminate the charter contract except to allege that it has exhausted its administrative appeals. (Doc. 12 at ¶ 37). Thus, because Wilbesan fails to state a claim for violation of the Due Process Clause of the Fourteenth Amendment, the motion to dismiss should be granted as to this aspect of Count II.[21]

Regarding Defendant's abstention argument, because there are no due process claims adequately alleged in the Amended Complaint and it appears undisputed that Plaintiff did not allege equal protection violations at any stage of the administrative review process and no such claim is presently before the Florida Second District Court of Appeal or any other state court, I find it unnecessary to address the abstention argument.

---

[21] It is questionable whether this is solely a pleading defect. Beyond its pleadings, Wilbesan fails to demonstrate a basis in the law for its suggestion that it had a right to follow a corrective action plan to cure fire or safety violations *before* its charter could be terminated and the school closed. Arguably, Florida law suggests the contrary. Thus, Florida law specifically provides that a school's charter may be terminated immediately if the school's sponsor determines that good cause has been shown or if the health, safety, or welfare of the students is threatened. See Fla. Stat. § 1002.33(8)(d). Under this provision, the charter school may appeal the termination decision within fourteen days of termination but is granted no right to a pre-deprivation hearing. See id. I suspect, without deciding, that this statutory scheme permitting post-deprivation process is adequate to satisfy the Fourteenth Amendment. See Hudson v. Palmer, 468 U.S. 517, 533-36 (1984). And, while it is not alleged in the Amended Complaint, it appears elsewhere that Plaintiff availed itself of such process. See (Docs. 1 at 9-10; 15 at 8-9). However, I also note that Florida law related to educational facilities may offer Plaintiff some recourse. See, e.g., Fla. Stat. § 1013(2)(c). Thus, I question whether Wilbesan should be permitted to replead the due process claim. If it desires to do so, counsel should address the legal basis for such a claim in the objections to this report and recommendation.

III.

Rule 65 of the Federal Rules of Civil Procedure governs Plaintiffs' motion for preliminary injunction. The purpose of such an injunction is to maintain the status quo until the court can enter a final decision on the merits of the case. United States v. DBB, Inc., 180 F.3d 1277, 1282 (11th Cir. 1999); see also Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).[22]  A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.[23]  Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205 (11th Cir. 2003); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); Haitian Refugee Ctr., Inc. v. Baker, 949 F. 2d 1109, 1110 (11th Cir. 1991). Because a preliminary injuction is an extraordinary and drastic remedy, it should not be granted unless the movant clearly establishes all four elements. Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001); McDonald's, 147 F.3d at 1306. A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits.[24]  See M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).

---

[22]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[23]Because the above multi-pronged test is conjunctive, requiring all four elements to be satisfied, Plaintiffs' failure to satisfy any element ceases the inquiry in favor of the Defendant.

[24]In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985

By their motion, Plaintiffs seek a preliminary injunction enjoining Defendant and its "agents, servants, employees, and attorneys, and all persons in active concert and participation" from: (1) withholding funding pursuant to Wilbesan's charter; (2) preventing the daily educational and administrative functions of Wilbesan as a charter school; and (3) preventing the reopening of Wilbesan while it corrects any outstanding deficiencies pertaining to the fire code. Plaintiffs contend this relief is warranted because, "if Defendant does perform the acts sought to be enjoined, the Plaintiffs will suffer immediate and irreparable harm in that their ability to educate children; valuable teaching resources and staff may be lost to job market; real and tangible business property may be lost (sic)." (Doc. 14 at 2, ¶ 2).

Defendant urges the court to deny Plaintiff(s)' motion as untimely and for not complying with the requirements of Local Rule [4.06].[25] It also urges that the motion is moot because it is based on the initial Complaint, not the Amended Complaint.[26] Finally, Defendant urges that Plaintiff(s) cannot show a substantial likelihood of success on the merits of their claims. (Doc. 18).

---

(11th Cir. 1995).

[25]Plaintiffs' motion, which was filed on February 16, 2006, was untimely. See (Doc. 7) (ordering Plaintiffs to re-file their motion on or before February 10, 2006). It may be denied on that basis alone.

[26]Because Plaintiffs' motion was filed contemporaneously with their Amended Complaint and supported by a subsequently filed affidavit, this argument is without merit. However, much of the argument in support of the motion relates to alleged due process deficiencies in the administrative review process. As noted above, these allegations are not part of the Amended Complaint. Given my conclusion that White does not have standing to assert her claims and Wilbesan has failed to state a claim for due process violations and may be legally barred from doing so, the focus here is on whether Wilbesan's claim of an equal protection violation merits injunctive relief at this time.

16

Plaintiff(s)' request for the entry of a preliminary injunction should be denied. At present, I conclude that Plaintiff(s) are unable to demonstrate a strong likelihood of success on the merits of Wilbesan's claim. The status quo in this case reflects that Wilbesan's charter has been terminated for fire/safety issues and the school closed since August 2005. The decision of the School Board in this regard has been affirmed at every step of the appeal process. While that review process did not involve an equal protection claim, it is reason to take pause over Plaintiff(s)' factual claims. Additionally, at present, Plaintiff(s)' showing that the School Board adopted and executed a policy, practice, custom or usage of operating a dual system of public charter schools for African-American-operated and white-operated charter schools is patently weak. While there is adequate suggestion in the pleadings that Wilbesan was treated differently from the so-called white-operated schools to withstand a Rule 12(b)(6) motion to dismiss, there is no sufficient showing on this motion that its treatment at the hands of the School Board was the product of any racially policy, custom, or practice. Nor is it sufficiently demonstrated on this motion that Wilbesan's circumstances were in fact substantially similar to the other so-called white-operated schools to merit any inference of race-based discrimination. Thus, I conclude that Plaintiff(s) do not demonstrate on this motion a substantial likelihood of success on the merits.

Additionally, although Plaintiff(s) assert "irreparable injury," their argument is premised on the fact that a successful showing of likelihood of success on the merits mandates such a finding. While such a premise may be legally correct, here, no such showing is made. Plaintiff(s)' other generalized allegations of irreparable harm, namely, that the school's reputation and that of White will be irreparably harmed and that students will be denied a free, appropriate public education absent an injunction, are not well demonstrated

17

and are speculative at best.  See Siegel v. LePore, 234 F.3d 1163, 1176-77 (11th Cir. 2000) ("As we have emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent'") (quoting Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990)).

On these conclusions, I find it unnecessary to address the remaining two prerequisites for the entry of a preliminary injunction

IV.

Accordingly, for the foregoing reasons, it is RECOMMENDED that the court DENY Plaintiffs' **Motion for Preliminary Injunction** (Doc. 14).  It is further RECOMMENDED that the court GRANT **Defendant's Motion to Dismiss** (Doc. 17) as to White (Count I) and Wilbesan's claim of a due process violation (Count II), and DENY the motion as to Wilbesan's claim of a denial of equal protection (Count II).  Absent additional showing, the dismissal of White and Wilbesan as here recommended should be with prejudice.

> Respectfully submitted on this
> 8th day of June 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable James D. Whittemore, United States District Court Judge
Counsel of Record